# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

*In re* **M.K. and S.H.**

**No. 19-1141** (Kanawha County 18-JA-287 and 19-JA-414)

**FILED**

**June 24, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother S.K., by counsel Elizabeth G. Kavitz, appeals the Circuit Court of Kanawha County's October 1, 2019, order terminating her parental rights to M.K. and S.H.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem, Sharon K. Childers, filed a response on behalf of the children in support of the circuit court's order and a supplemental appendix. On appeal, petitioner argues that the circuit court erred in adjudicating her as an abusing parent of S.H. and in terminating her parental rights rather than imposing a less-restrictive dispositional alternative.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In May of 2018, the DHHR filed a child abuse and neglect petition alleging that petitioner tested positive for controlled substances while pregnant with M.K. According to the DHHR, petitioner tested positive for marijuana and methamphetamines twice during her pregnancy, and the child exhibited withdrawal symptoms after birth. Additionally, the DHHR alleged that petitioner could not provide a suitable living environment because she lived with individuals who had significant histories with Child Protective Services. During the preliminary hearing, the DHHR presented evidence that petitioner admitted to illicit drug use during her pregnancy. Petitioner was ordered to drug screen at this hearing and produced positive results for

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

1

amphetamine, methamphetamine, and marijuana. The circuit court ratified M.K.'s temporary removal from the home and ordered petitioner to participate in reunification services, including supervised visitations.

The circuit court held an adjudicatory hearing in July of 2018 and adjudicated petitioner as an abusing parent based on the evidence presented at the preliminary hearing. Petitioner did not testify or present any additional evidence. Later, in September of 2018, the circuit court granted petitioner a post-adjudicatory improvement period and ordered that she participate in a forensic parental fitness evaluation, random drug screening, drug treatment and relapse prevention courses, parenting and adult life skills classes, and supervised visitations as terms of the improvement period. Petitioner was also required to maintain appropriate housing and employment during her improvement period.

Sometime prior to the first review hearing in October of 2018, petitioner was arrested and incarcerated until mid-December 2018. Once released, petitioner reported that she was eighteen weeks pregnant with her second child, S.H. In June of 2019, the DHHR filed an amended petition alleging that petitioner tested positive for controlled substances while pregnant with S.H. The circuit court held an adjudicatory hearing on the amended petition in July of 2019; however, petitioner did not appear, but was represented by counsel. The DHHR presented evidence that petitioner admitted to her caseworker that she used methamphetamine while pregnant with S.H. The circuit court found, by uncontroverted evidence, that petitioner "admitted to smoking methamphetamine while pregnant with [S.H.] and tested positive for methamphetamines on two occasions" and, based on this evidence, adjudicated petitioner as an abusing parent. The circuit court noted that petitioner was adjudicated as an abusing parent for the same issues regarding M.K. and, despite the services provided during an improvement period, continued to abuse controlled substances and exhibit poor decision making. Although petitioner's formal post-adjudicatory improvement period expired in March of 2019, the circuit court ordered that reunification services continue.

In September of 2019, the circuit court held a dispositional hearing, for which petitioner appeared, but did not testify. The DHHR presented evidence that petitioner inconsistently participated in services throughout her improvement period and thereafter. The DHHR case worker testified that petitioner participated in only "[ten] or [twelve]" drug screens since the beginning of 2019, rather than once per week as directed. The case worker further testified that petitioner did not have utilities in her home or a known source of income. Regarding substance abuse treatment and relapse prevention courses, the case worker testified that petitioner left a program prior to completion because it "was too intensive." The case worker was aware that petitioner initiated a new program thereafter, but explained that she had missed two of the four appointments thus far. Finally, court summaries indicated that petitioner inconsistently attended parenting and adult life skills classes by failing to confirm session times or simply not answering the door when the service provider arrived.

Ultimately, the circuit court found "that despite being given an improvement period, [petitioner] ha[d] not rectified the circumstances which led to the filing of the petition in this matter. During the course of this case, [petitioner] did not consistently participate in drug screens, drug treatment, or parenting [classes]." The court also noted that petitioner missed "a significant

2

number of visits [with her children] because of her failure to drug screen regularly" and, as a result, had "not had the opportunity to bond with either of her children." Based on petitioner's failure to follow through with rehabilitative services, the circuit court concluded that there was no reasonable likelihood that the conditions of abuse and neglect could be corrected in the near future and that termination of petitioner's parental rights was in the children's best interests. Accordingly, the circuit court terminated petitioner's parental rights and denied post-termination visitation by its October 1, 2019, order. Petitioner now appeals that order.[2]

The Court has previously held:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Upon review, this Court finds no error in the proceedings below.

On appeal, petitioner argues that the circuit court erred in finding that she was an abusing parent and that S.H. was an abused child. Petitioner asserts that the DHHR failed to present clear and convincing evidence that she abused S.H. We find this argument unpersuasive.

Regarding adjudication, this Court has held

> "[West Virginia Code § 49-4-601(i)], requires the [DHHR], in a child abuse or neglect case, to prove 'conditions existing at the time of the filing of the petition . . . by clear and convincing [evidence].' The statute, however, does not specify any particular manner or mode of testimony or evidence by which the [DHHR] is obligated to meet this burden." Syllabus Point 1, *In Interest of S.C.*, 168 W.Va. 366, 284 S.E.2d 867 (1981).

Syl. Pt. 1, *In re Joseph A.*, 199 W. Va. 438, 485 S.E.2d 176 (1997) (citations omitted). West Virginia Code § 49-1-201 defines an "abusing parent" as a "parent . . . whose conduct has been adjudicated by the court to constitute child abuse or neglect as alleged in the petition charging

---

[2]The respective fathers of the children also had their parental rights terminated below. According to the parties, the permanency plan for the children is adoption in their current foster placement.

child abuse or neglect." Additionally, an "abused child" is one "whose welfare is harmed or threatened by . . . [a] parent . . . who knowingly or intentionally inflicts, attempts to inflict, or knowingly allows another person to inflict, physical injury or mental or emotional injury, upon the child or another child in the home." *Id*. Here, the DHHR presented testimony that petitioner tested positive for methamphetamine while pregnant with S.H. and that petitioner admitted to the same. Moreover, petitioner produced no contradictory evidence at the adjudicatory hearing or at any time thereafter.

> Because the purpose of an abuse and neglect proceeding is remedial, where the parent or guardian fails to respond to probative evidence offered against him/her during the course of an abuse and neglect proceeding, a lower court may properly consider that individual's silence as affirmative evidence of that individual's culpability.

Syl. Pt. 2, *W. Va. Dep't of Health & Human Res. ex rel. Wright v. Doris S.*, 197 W. Va. 489, 475 S.E.2d 865 (1996). The record is devoid of any evidence to contradict the circuit court's findings that petitioner abused controlled substances while pregnant with S.H. Therefore, we find no error in the circuit court adjudicating petitioner as an abusing parent in regard to S.H.

Petitioner next argues that the circuit court erred in terminating her parental rights rather than imposing a less-restrictive dispositional alternative. According to petitioner, a disparity existed in the DHHR's recommendations to the circuit court in that its written opinion recommended petitioner be provided continued reunification services, but the case worker's dispositional hearing testimony recommended termination of parental rights. Petitioner also argues that the circuit court incorrectly considered her refusal to relinquish her rights to M.K. in deciding to terminate her parental rights.

Petitioner's argument ignores the clear and convincing evidence that she failed to follow through with a reasonable family case plan. West Virginia Code § 49-4-604(b)(6) (2019)[3] provides that a circuit court may terminate a parent's parental rights upon findings that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the welfare of the children. West Virginia Code § 49-4-604(c)(3) (2019) clearly sets forth that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected" when

> [t]he abusing parent . . . ha[s] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health, or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare, or life of the child.

Here, the evidence shows that the DHHR prepared a family case plan in response to the circuit court granting petitioner an improvement period. However, despite extensive opportunities to

---

[3]Although the Legislature amended West Virginia Code § 49-4-604 effective June 5, 2020, including renumbering the provisions, the amendments do not impact this case.

participate in services, petitioner failed to complete the terms of the case plan.[4] Petitioner failed to complete substance abuse treatment and relapse prevention programs, complete parenting and adult life skills classes, or consistently submit to random drug screening. As a result, petitioner failed to correct the conditions that threatened the children's welfare. The conditions were clearly ongoing as petitioner admitted to using controlled substances while pregnant with S.H. just one year after subjecting M.K. to the same treatment. Based on this evidence, the circuit court did not err in finding that there was no reasonable likelihood that the conditions of abuse and neglect could be corrected in the near future and that termination was necessary for the welfare of the children.[5]

This Court has held as follows:

> "Termination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604 (2019)] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c) (2019)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). The circuit court's finding that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future is supported by the record and is sufficient to terminate petitioner's parental rights without a less-restrictive dispositional alternative. Moreover,

> "[c]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened, and this is particularly applicable to children under the age of three years who are more susceptible to illness, need consistent close interaction with fully committed adults, and are likely to have their emotional and physical development retarded by numerous placements." Syl. Pt. 1, in part, *In re R.J.M.,* 164 W.Va. 496, 266 S.E.2d 114 (1980).

*Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 4. Again, one year after the birth of M.K., petitioner continued to abuse controlled substances and failed to maintain an adequate home or obtain gainful employment. The children would not benefit from continued speculation about

---

[4]Petitioner briefly argues that her incarceration hindered her improvement period progress and prejudiced her. However, we remind petitioner that the completion of the terms set forth in the improvement period was her responsibility. *See* W. Va. Code § 49-4-610(4)(A). Additionally, we note that petitioner was provided nearly twelve months to participate in and comply with the terms of the improvement period, which is twice the amount of time permitted by West Virginia Code § 49-4-610 for a post-adjudicatory improvement period.

[5]As an aside, petitioner asserts that the circuit court failed to make the findings required by West Virginia Code § 49-4-604(b)(6) (2019) on the record. However, the findings are clearly set forth in the circuit court's order on appeal and are wholly supported by the record.

petitioner's potential improvement. The children deserved permanency, and the circuit court did not err in terminating petitioner's parental rights to provide that permanency.

For the foregoing reasons, we find no error in the decision of the circuit court, and its October 1, 2019, order is hereby affirmed.

Affirmed.

**ISSUED**:  June 24, 2020


**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison